IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEREMY RANDELL MULLIGAN,       )
    Petitioner,             )  Civil Action No. 12-223 Erie
                            )
v.                              )  District Judge Cathy Bissoon
                            )  Magistrate Judge Susan Paradise Baxter
LEWIS FOLINO, et al.,           )
    Respondents.            )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

    **A.    Relevant Background**[1]

Petitioner, state prisoner Jeremy Randell Mulligan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). He is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Erie County on July 2, 2007, for crimes he committed against his girlfriend, Kristi Corder.

Corder was shot in August of 2006. She was gravely injured but survived. In May of 2007, an Erie County jury determined that Petitioner was the one who shot her and convicted him of numerous

---

[1]    Respondents have submitted the Common Pleas Court's file. The documents in that file are indexed and numbered 1 through 90. They shall be cited to as "CP Dkt. No. __."

1

crimes, including attempted homicide. The Common Pleas Court summarized the evidence admitted at Petitioner's trial as follows:

> In the early morning hours of August 7, 2006, Appellant shot his girlfriend Kristi Corder at point-blank range in the neck with a .28 caliber handgun. The gunshot shattered Corder's spine and exited through her cheek. Corder has been rendered a quadriplegic and will never breathe on her own again without the use of a ventilator. For a long time, it appeared Kristi Corder would die from this gunshot wound. Although she has survived, Corder will never be able to function independently nor care for herself or her two minor children.
>
> [Petitioner] is a native of Detroit, Michigan. [Petitioner] came to Erie, Pennsylvania to traffic in illegal drugs. By his own admission, [Petitioner] did not have any significant legal employment while living in Erie.
>
> [Petitioner] was romantically involved with Kristi Corder and was often at her residence at 619 East 28th Street in the City of Erie. [Petitioner] frequently stored his drugs and drug proceeds at Corder's downstairs apartment.
>
> In the apartment above Corder lived David Ollie. About 1:07 a.m. on August 7, 2006, Ollie was awakened by Kristi Corder pounding on his door. Corder was accompanied by her two children and was crying when she told Ollie she had just been robbed. Although Corder did not want to call the police, she asked to borrow Ollie's cell phone. She then called [Petitioner]. Afterward, Corder returned to her apartment leaving her two children with Ollie.
>
> Concerned about his neighbor, Ollie went downstairs to check on Corder and saw the apartment was ransacked consistent with her description of being robbed. [Petitioner] arrived while Ollie was in Corder's apartment. [Petitioner] was upset and profane. Ollie decided to give them privacy and left.
>
> During this time, Ollie observed outside of his apartment building an older model gray vehicle which he had seen earlier in the day. At some point, Corder brought blankets to Ollie's apartment for her two children who were going to stay there for the night. About twenty minutes after Corder left, Ollie heard a single gunshot. Ollie looked outside and observed the same gray vehicle he had seen earlier only this time it was pulling out of the driveway without headlights on.
>
> Ollie ran downstairs and found Kristi Corder lying in a pool of blood. He called 911. While attending to Corder, Ollie asked if her boyfriend (meaning [Petitioner]) did this to her. In what Ollie thought to be a dying declaration, Corder gave Ollie non-verbal confirmation that she had been shot by [Petitioner].
>
> In addition to Ollie, the Commonwealth adduced the testimony of [Petitioner's] employee in the drug trade, Gregory Austin. In the early morning hours of August 7, 2006, Austin

received a phone call from [Petitioner] telling him to come right away to Corder's residence.

Austin was met outside of Corder's apartment by [Petitioner]. The two then drove to Austin's apartment in [Petitioner's] 1998 gray Delta 88 Oldsmobile. During the ride, [Petitioner] told Austin that Corder had set him up to get robbed of eleven thousand dollars and eleven ounces of cocaine. Because he never dealt drugs out of Corder's residence, [Petitioner] believed Corder was the only person who knew he kept his drugs and money there. To [Petitioner] it meant Corder was directly involved in the theft of his money and drugs. [Petitioner] told Austin that if Corder does not give him his money and drugs back, he is going to kill her. [Petitioner] dropped Austin off at his apartment.

A short time later, [Petitioner] returned to Austin's apartment and told him they needed to leave immediately because he had just "killed the bitch." Trial Transcript, Day 2, May 15, 2007, p. 89. Austin and [Petitioner] then fled from Erie, Pennsylvania to Detroit, Michigan in the same 1998 Delta 88 Oldsmobile. En route [Petitioner] told Austin he shot Corder. Austin saw a gun on [Petitioner's] lap.

The Commonwealth also produced taped telephone calls in which [Petitioner] was asking his mother to get rid of the gun that he brought to Detroit.

Officer Pat Chandley of the Identification Unit of the Erie Police Department testified that he lifted a fingerprint from a ceramic type coffee mug sitting on a coffee table in the front room of Kristi Corder's apartment. A subsequent lab report confirmed the fingerprint on this coffee mug came from [Petitioner].

Terry Amacher testified that he frequently drove [Petitioner] around Erie to pick up or drop off drugs. Amacher took [Petitioner] to Kristi Corder's apartment approximately six to ten times and described [Petitioner] as having a sexual relationship with Kristi Corder. At [Petitioner's] request, Amacher found a person willing to title [Petitioner's] Delta 88 in his own name. Joseph Fosburg testified that he registered [Petitioner's] Delta 88 Oldsmobile in his name in exchange for drugs and money from [Petitioner].

(CP Dkt. No. 47, Rule 1925(b) Opinion, <u>Commonwealth v. Mulligan</u>, No. 3020 of 2006, slip op. at 1-3 (C.P. Erie, Oct. 31, 2007)).

Petitioner was arrested in September of 2006 in Detroit, Michigan. "After a determination at trial of her competency, Corder, a paraplegic from the neck down, testified in person while seated in a wheelchair and connected to a ventilator. Corder unequivocally identified Petitioner as the shooter." (CP Dkt. No. 55, Notice of Intent to Dismiss, <u>Commonwealth v. Mulligan</u>, No. 3020 of 2006, slip op. at 4 (Jan. 27, 2010)). After a three day trial, the jury convicted Petitioner of Criminal Attempt/Homicide,

3

Aggravated Assault, Recklessly Endangering Another Person, Firearms Not to be Carried Without a License, and Possessing Instruments of a Crime. On July 2, 2007, the trial court sentenced him to an aggregate term of 23 ½ to 47 years' imprisonment.

Petitioner, through his counsel at the time (George M. Schroeck, Esq.), filed a direct appeal with the Superior Court of Pennsylvania. He claimed that the trial court erred: (1) in allowing Corder to testify where her memory was impaired due to her medical condition; (2) in denying a motion for a continuance; (3) in permitting evidence of his prior bad acts to be admitted into evidence; and, (4) in permitting evidence of his telephone calls with his mother to be admitted into evidence. On October 17, 2008, the Superior Court issued a Memorandum in which it denied Petitioner's claims and affirmed his judgment of sentence. (CP Dkt. No. 48, Commonwealth v. Mulligan, No. 1388 WDA 2007, slip op. (Pa.Super. Oct. 17, 2008)).

Petitioner did not file a petition for allowance of appeal ("PAA") with the Pennsylvania Supreme Court. Accordingly, his judgment of sentence became final on Monday, November 17, 2008, which was thirty days after the Superior Court's decision was entered and thus the date that the time for filing a PAA expired. Gonzalez v. Thaler, — U.S. — , 132 S.Ct. 641, 653-56 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). See also Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

On October 8, 2009, which was approximately 325 days after the date his judgment of sentence became final, Petitioner filed a timely *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP Dkt. No. 49). The PCRA court appointed an attorney with the Public Defender's Office, Julia Dudics, Esq., to represent him and denied him relief in February of 2010. (CP Dkt. Nos. 55-58). Petitioner, through another attorney with the Public Defender's Office, Nicole Sloane, Esq., filed an appeal with the Superior Court. According to Petitioner, at some point after he

4

filed this appeal he was transferred to a prison in Muskegon County, Michigan, for service of his Pennsylvania sentence. He would be transferred back to a Pennsylvania state prison (SCI Greene) in May of 2011. [ECF No. 22 at 5-6].

On December 28, 2010, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision to deny relief. It summarized the claims that Petitioner raised in the appeal as follows:

(1) the trial court abused its discretion in denying his motion for a continuance;

(2) trial counsel was ineffective for failing to appeal the denial of a motion *in limine*;

(3) he was entitled to a new trial because he suffered prejudice by the presence of his former attorney at the defense table during trial;

(4) the Commonwealth suppressed evidence favorable to the defense in the form of medical documentation pertaining to the victim, videotaped statements of the victim and her children, and alleged plea agreements reached with various witnesses;

(5) his trial counsel was ineffective for failing to request a cautionary instruction after a witness admitted that he provided false testimony;

(6) all prior counsel were ineffective for failing to challenge the admission of his previous convictions and charges;

(7) the Commonwealth committed prosecutorial misconduct by violating a court order and denying defense experts access to the victim;

(8) the trial court erred in allowing the prosecution to play only excerpts of audio recordings of telephone conversations from telephone calls he made from the Erie County Prison in violation Pennsylvania Rule of Evidence 106;

(9) his trial counsel was ineffective for failing to question the jury regarding issues of race and past victimization; and,

(10) the trial court improperly sentenced him based upon aggravating factors that were not presented to the jury in violation of Blakely v. Washington, 542 U.S. 296 (2004).

Commonwealth v. Mulligan, No. 359 WDA 2010, slip op. at 6-20 (Pa.Super. Dec. 10, 2010).[2]

Petitioner did not file a PAA with the Supreme Court of Pennsylvania. Accordingly, his first PCRA proceeding concluded on or around January 27, 2011, the date upon which the time to file a PAA expired. Swartz, 204 F.3d at 419-21.

On March 16, 2011, Petitioner – who was still confined at the prison in Muskegon, Michigan at this time – filed a second *pro se* PCRA motion. (CP Dkt. No. 65). Approximately two months later, in May of 2011, he was transferred from Muskegon to SCI Greene, in Waynesburg, Pennsylvania. (See CP Dkt. No. 27, dated May 27, 2011, in which Petitioner lists his address as SCI Greene).

The PCRA court appointed William J. Hathaway, Esq., to represent Petitioner. It subsequently dismissed the second PCRA motion because, among other reasons, it was untimely. (CP Dkt. Nos. 68-70). Petitioner, through Hathaway, filed an appeal. Afterwards, Hathaway was permitted to withdraw as counsel and Petitioner litigated his appeal *pro se*. (CP Dkt. Nos. 71-85).

On March 12, 2012, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision. It held that the second PCRA motion was untimely under the PCRA's one-year statute of limitations:

> The timeliness of a post-conviction petition is jurisdictional. Commonwealth v. Murray, 753 A.2d 201, 203 (Pa. 2000). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, an exception to the time for filing the petition. Commonwealth v. Gamboa-Taylor, 753 A.2d 780, 783 (Pa. 2000); 42 Pa.C.S.A. § 9545(b)(1). Under these exceptions the petitioner must plead and prove that "(1) there has been interference by government officials in the presentation of the claim; or (2) there exists after-discovered facts or evidence; or (3) a new constitutional right has been recognized." Commonwealth v. Fowler, 930 A.2d 589, 591 (Pa.Super. 2007) (citations omitted). A PCRA petition invoking one of these statutory exceptions must "be filed within sixty days of the date the claim first could have been

---

[2] The Common Pleas Court's file contains only the odd-numbered pages of the Superior Court's decision. (See CP Dkt. No. 64). A complete copy of it is made available to the public by the Superior Court's Prothonotary's Office. Respondents are reminded that "[c]are should be taken so that all items [contained in the state court record] are photocopied accurately, legibly, and in full." LCvR 2254.E.1.c.

> presented." Id. at 783. See also 42 Pa.C.S.A. § 9545(b)(2). Moreover, exceptions to the time restrictions for the PCRA must be pled in the petition, and may not be raised for the first time on appeal. Commonwealth v. Burton, 936 A.2d 521, 525 (Pa.Super. 2007); see also Pa.R.A.P. 302(a) ("Issues not raised before the lower court are waived and cannot be raised for the first time on appeal.").
>
> Appellant's judgment of sentence became final on November 17, 2008, after the thirty-day period for filing an allowance of appeal to the Pennsylvania Supreme Court had expired. 42 Pa.C.S.A. § 9545(b)(3). Therefore, Appellant had to file this PCRA petition by November 17, 2009, in order for it to be timely. As Appellant filed the instant petition on March 16, 2011, it is patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. Commonwealth v. Beasley, 741 A.2d 1258, 1261 (Pa. 1999).
>
> Appellant has failed to plead or prove the applicability of any of the exceptions to the PCRA's time restrictions….
>       - - -
> Because Appellant's second PCRA petition was filed more than one year after his judgment of sentence became final, and he has failed to meet his burden of pleading and proving any of the three exceptions to the timeliness requirement in 42 Pa.C.S.A. § 9545(b)(1), the PCRA court correctly concluded that it lacked jurisdiction to review the merits of Appellant's claims. Therefore, the PCRA court's order denying relief was proper.

(CP Dkt. No. 88, Commonwealth v. Mulligan, No. 1038 WDA 2011, slip op. at 4-7 (Pa.Super. Mar. 12, 2012)). The Supreme Court of Pennsylvania denied a PAA on August 15, 2012. (CP Dkt. No. 87).

On or around September 24, 2012, Petitioner filed with this Court his habeas petition [ECF No. 1]. He raises the following four claims:

1. He was denied due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, where the trial court denied his timely request for a continuance of trial;

2. He was denied due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, where the trial court improperly found the victim to be competent to testify at his trial and make an in-court identification of him as her assailant;

3. He was denied due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, where the prosecution engaged in misconduct by:

(a) concealing the whereabouts of and denying trial counsel and defense experts access to the victim prior to trial;

(b) withholding exculpatory medical records, reports, videotaped interviews of the victim's children and a photo array from which Petitioner was allegedly identified by prosecution witness David Ollie; and

(c) concealing express and/or implied promises of consideration made to prosecution witnesses Gregory Austin.

[ECF No. 1 at 18-21. See also ECF No. 8].

**B. Discussion**

AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Section 2244(d)(1)(A) applies in this case, with AEDPA's limitation period commencing for each of Petitioner's claims on the date his judgment of sentence became final by the conclusion of direct review, which is November 17, 2008.[3] He filed his first (and only timely) PCRA motion 325 days later, on October 8, 2009. In accordance with § 2244(d)(2), that first PCRA motion statutorily tolled AEDPA's limitations period beginning on October 8, 2009.

Petitioner's first PCRA proceeding concluded on or around January 27, 2011, which is the date upon which the time to file an appeal of the Superior Court's December 28, 2010, Memorandum expired. See Swartz, 204 F.3d at 419-20. AEDPA's limitations period began to run again the next day, on January 28, 2011. Since 325 days already had expired from the limitations period, Petitioner had 40 more days – until on or around March 9, 2011 – to file a timely federal habeas petition. He did not file the instant petition until on or around September 24, 2012, which is more than one year and six months past the deadline.

Importantly, the limitations period was not tolled during the pendency of Petitioner's second PCRA proceeding. Because his second PCRA motion was untimely, it does not qualify as a "properly filed application for State post-conviction or other collateral review" under the terms of § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (quotation marks and brackets deleted); id. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).").

---

[3] Petitioner contends that the Court should calculate the statute of limitations to have commenced on the date "which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed" pursuant to § 2244(d)(1)(B). In support, he asserts that state prison officials interfered with his ability to prepare and file a federal habeas petition because they transferred him to Muskegon and then did not return his trial court records to him until August 28, 2012. These are the same factors that he cites in support of his contention that he is entitled to equitable tolling. The Court explains *infra* why these factors do not establish equitable tolling. For the same reasons, these factors do not provide a basis to calculate the statute of limitations under § 2244(d)(1)(B).

Thus, all of Petitioner's claims are untimely unless he can demonstrate that equitable tolling applies during the relevant time period. A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2562 (2010). See also United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013); Ross v. Varano, 712 F.3d 784, 798-804 (3d Cir. 2013); Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012).

Petitioner contends that he is entitled to equitable tolling "[d]uring the time at which [he] was being housed ... in Muskegon, Michigan, [because] he had no knowledge of the AEDPA's 1-year filing provisions and only limited access to the prison law library, which did not contain legal materials describing the remedy or federal habeas corpus or the AEDPA" or "contain applicable Supreme Court Reporters containing applicable decisions which would have alerted or allowed [him] to ascertain the potential difficulties he could face by filing a second PCRA petition as opposed to filing a habeas corpus petition with this Court[.]" [ECF No. 22 at 6]. It is well established that "lack of legal knowledge or legal training does not alone justify equitable tolling[,]" Ross, 712 F.3d at 799-800 (citations omitted), so the mere fact that Petitioner was not aware of AEDPA's limitations period when he was at Muskegon does not advance his argument. Id. at 800 (citing Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect *pro se* petitioners to know when the limitations period expires … such inadvertence on Doe's part cannot constitute reasonable diligence."). But even if this Court equitably tolled AEDPA's statute of limitations for the entire period that Petitioner was at Muskegon, Petitioner's claims still are untimely. That is because he was transferred from Muskegon to SCI Greene in May of 2011, and he still waited more than 15 months to file a his petition with this Court.

Petitioner makes no complaints about the legal library at the Pennsylvania prisons at which he was housed, but contends that he is entitled to equitable tolling even after he was returned from

Muskegon because he allegedly did not have access to "several boxes containing [his] state court trial records" until August 28, 2012. [ECF No. 22 at 6]. He claims that those boxes contained his "trial transcripts and other state court trial records, including discovery material[,]" and that he could not begin to prepare his federal habeas petition until he received them. [ECF No. 22 at 6-7]. Petitioner's contention must be rejected. If the Court assumes for the sake of argument that he is being truthful, the record before this Court establishes that lack of access to his trial court records did not interfere with his ability to litigate his claims once he returned from Muskegon. In July of 2011, he filed a *pro se* Concise Statement of Matters Complained of on Appeal in his second PCRA proceeding. (CP Dkt. No. 78). In that document, he listed 14 grounds for relief, included the claims that he now is raising before this Court. By September of 2011, Petitioner filed *pro se* a 10-page document with the Superior Court in which he recited in detail the factual and procedural history of his case and made legal arguments. (CP Dkt. No. 85). These documents establish that even if Petitioner did not have access to the boxes that contained his state trial record until August 28, 2012, he unquestionably was cable of filing a petition for a writ of habeas corpus with this Court as early as July of 2011 and no later than September of that same year.

Petitioner requests an evidentiary hearing on the issue of equitable tolling. He is not entitled to one. As explained above, even if the Court were to credit his assertions that the law library at Muskegon was inadequate and that he did not have access to the boxes containing his state court records until August 28, 2012, he still cannot establish that he pursued his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing of his federal habeas petition.

In conclusion, all of Petitioner's claims are untimely under AEDPA's statute of limitations. His claims must be denied for that reason.

11

## C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied as untimely. Accordingly, a certificate of appealability should be denied.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 18, 2013

cc:     The Honorable Cathy Bissoon
        United States District Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Jeremy Randell Mulligan
HD-1829
SCI Greene
175 Progress Drive
Waynesburg, PA 15370